UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

VALDEN DEVONE WHITE,

               Plaintiff,

                                    Case No. 1:24-cv-193

v.

                                    Honorable Sally J. Berens

UNKNOWN BLAIR et al.,

               Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

       This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

       Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Woodin, Bowne, and Unknown Party. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Blair: (i) official capacity claims; (ii) First Amendment free exercise claim; (iii) First Amendment claims regarding Plaintiff's ability to communicate with his fiancé; (iv) Eighth Amendment claims; (v) Fourteenth Amendment procedural and substantive due process claims; and (vi) any intended federal claims regarding Plaintiff's use of the grievance procedure and Defendant Blair's violation of the MDOC's policies. Plaintiff's state law claims and First Amendment retaliation claim against Defendant Blair in Blair's individual capacity will remain in the case.

Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.4) will be denied.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF officials: Resident Unit Manager Unknown Blair; Unit Chief Heather Woodin; Assistant Deputy Warden Unknown Bowne; and Correctional Officer Unknown Party, named as John Doe #1. (Compl., ECF No. 1, PageID.1–2.) Plaintiff sues Defendant Blair in Blair's individual capacity and official capacity, (*id.*, PageID.1), and he sues Defendants Woodin, Bowne, and Unknown Party in their individual capacities. (*Id.*, PageID.2.) Plaintiff identifies Defendants Blair, Woodin, and Bowne as members of the Security Classification Committee (SCC). (*Id.*, PageID.1–2.)

In Plaintiff's complaint, he states that he is "a[n] avid grievance writer."[2] (*Id.*) On April 20, 2022, Plaintiff was placed in segregation after "being assaulted." (*Id.*) Plaintiff claims that Defendant Unknown Party failed to "properly secur[e]" Plaintiff's property when he packed Plaintiff's property "during [Plaintiff's] transfer to segregation," including failing to "create a personal property receipt per policy" and failing to "give Plaintiff his seeing glasses." (*Id.*) Plaintiff alleges that this violated policy and his due process rights under the Fourteenth Amendment. (*Id.*)

The following day, April 21, 2022, Plaintiff told Defendant Blair that Plaintiff "was going to file a grievance on him and others for violating [Plaintiff's] rights to due process." (*Id.*) Defendant Blair "verbally threatened [Plaintiff] saying, 'He will get rid of [Plaintiff] for filing

---

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's filings.

grievances.'" (*Id.*) Around this same time, Plaintiff filed a grievance about "being unlawfully confined to segregation." (*Id.*)

Subsequently, on April 26, 2022, "[Plaintiff] was charged with [a] false misconduct by [Defendant] Blair and SCC members." (*Id.*) It appears that Plaintiff was charged with fighting, a class I misconduct charge, but was later found not guilty of the charge. (*See, e.g.*, *id.*, PageID.3; ECF No. 1-1, PageID.9, 12.) Plaintiff claims that he "was a victim assaulted by another inmate," but then was "treated as a suspect." (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that "a falsified reclassification notice was created to reclassify [him] to administrative segregation by [Defendant] Blair and SCC members." (*Id.*, PageID.2–3.) On April 27, 2024, Plaintiff filed a grievance "on [Defendant] Blair's misconduct." (*Id.*, PageID.3.)

On May 5, 2022, Plaintiff "was released from segregation to general population." (*Id.*) Plaintiff claims that on May 12, 2022, Defendant Blair "violate[d] policy by responding [to a] grievance written on [Blair's] own conduct." (*Id.*) On May 25, 2022, Plaintiff filed a prisoner property claim with the MDOC. (*Id.*)

On June 16, 2022, Plaintiff was transferred from general population "to a higher level . . . in administrative segregation in violation of due process" and "without supportive evidence by order of [Defendant] Blair." (*Id.*) Plaintiff was unable to file a timely grievance on June 16, 2022, due to his "transfer to level 5 administrative segregation." (*Id.*)

Plaintiff claims that Defendant Blair never "correct[ed] the falsified document, not even after . . . acknowledging [that Plaintiff] was found not guilty for the fighting ticket." (*Id.*)

On August 24, 2022, the SCC at the Ionia Correctional Facility released Plaintiff to general population "in [the] level 5 prison." (*Id.*)

Plaintiff claims that, while he was in segregation at DRF, he "was not able to follow laws of [his] religion," and he could not "worship in [his] community setting." (*Id.*) Plaintiff also claims that "[his] fiancé [was] frustrated with [his] circumstances, [and] left [him]." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First Amendment, Eighth Amendment, and Fourteenth Amendment. (*See id.*, PageID.2, 4–5.) Plaintiff also avers that Defendants violated the MDOC's policies and state law. (*See id.*, PageID.4.) As relief, Plaintiff seeks compensatory and punitive damages.

## II.     Request for Appointment of Counsel

In Plaintiff's complaint, he requests the appointment of counsel. (ECF No. 1, PageID.4.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.4) therefore will be denied.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Defendants Woodin and Bowne

Plaintiff fails to allege facts showing how Defendants Woodin and Bowne were personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.) Specifically, when listing the Defendants named in this action, Plaintiff lists these Defendants; however, Plaintiff fails to name Defendants Woodin and Bowne when setting forth his factual allegations. (*See id.*, PageID.2–3.) Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Moreover, although Plaintiff identifies Defendants Woodin and Bowne, along with Defendant Blair, as members of the SCC at DRF, and Plaintiff refers to "SCC members" in his factual allegations, any "[s]ummary reference to a single, five-headed 'Defendants' [or members] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Thus, Plaintiff's claims against Defendants Woodin and Bowne fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Furthermore, to the extent that Plaintiff seeks to hold Defendants Woodin and Bowne liable due to their supervisory positions, government officials, such as Woodin and Bowne may not be

held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Woodin and Bowne encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Because Plaintiff has failed to allege that these Defendants engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

Accordingly, Plaintiff's claims against Defendants Woodin and Bowne will be dismissed.

###### B.        Defendant Unknown Party

Plaintiff alleges that Defendant Unknown Party deprived him of property without due process of law. (*See* Compl., ECF No. 1, PageID.2.) Specifically, Plaintiff claims that Defendant Unknown Party failed to "properly secur[e]" Plaintiff's property when he packed Plaintiff's property "during [Plaintiff's] transfer to segregation," including failing to "create a personal property receipt per policy" and failing to "give Plaintiff his seeing glasses." (*Id.*)

Plaintiff's claim that Defendant Unknown Party deprived him of property without due process of law is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers," Mich. Comp. Laws § 600.6419(1)(a), and the Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court

action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim against Defendant Unknown Party, and Defendant Unknown Party will be dismissed from this action.[3]

### C.      Defendant Blair

#### 1.      Official Capacity Claims

Plaintiff sues Defendant Blair in Blair's official capacity and individual capacity. (Compl., ECF No. 1, PageID.1.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich.*

---

[3] To the extent that Plaintiff intended to raise an Eighth Amendment claim against Defendant Unknown Party regarding Plaintiff's need for his glasses, for the same reasons set forth below, Plaintiff fails to state such a claim because he alleges no facts to suggest that Defendant Unknown Party was aware of Plaintiff's need for glasses, let alone that Defendant Unknown Party knew of this need and disregarded it. *See infra* Section III.C.4.b.

*Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks monetary damages only. (Compl., ECF No. 1, PageID.5.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendant Blair.

### 2.    First Amendment Retaliation Claims

Plaintiff claims that Defendant Blair retaliated against him in violation of the First Amendment. (*See* Compl., ECF No. 1, PageID.4–5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that on April 20, 2022, he was placed in segregation after "being assaulted." (Compl., ECF No. 1, PageID.2.) Plaintiff claims that his property was not packed up properly when he was transferred to segregation. (*Id.*) The next day, April 21, 2022, Plaintiff told Defendant Blair that he "was going to file a grievance on [Blair] and others for violating [Plaintiff's] right to due process." (*Id.*) Defendant Blair "verbally threatened [Plaintiff] saying, 'He will get rid of [Plaintiff] for filing grievances.'" (*Id.*) Around this same time, Plaintiff filed a

grievance about "being unlawfully confined to segregation." (*Id.*) Subsequently, on April 26, 2022, "[Plaintiff] was charged with [a] false misconduct by [Defendant] Blair and SCC members." (*Id.*) It appears that Plaintiff was charged with fighting, a class I misconduct charge, but was later found not guilty of the charge. (*See, e.g.*, *id.*, PageID.3; ECF No. 1-1, PageID.9, 12.) Plaintiff also alleges that "a falsified reclassification notice was created to reclassify [him] to administrative segregation by [Defendant] Blair and SCC members." (Compl., ECF No. 1, PageID.2–3.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Therefore, although Plaintiff has not proven his First Amendment retaliation claim, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Blair on initial review.

### 3.    Other First Amendment Claims

#### a.    Free Exercise Claims

The Court construes Plaintiff's complaint to raise a First Amendment Free Exercise Clause claim regarding Plaintiff's ability to practice his religion. (*See* Compl., ECF No. 1, PageID.3.)

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* Although "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To show that this right has been violated, Plaintiff must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and

(3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion."). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id*.

Here, Plaintiff does not identify his religion. Plaintiff claims that he "was not able to follow laws of [his] religion" while in segregation, and that he could not "worship in [his] community setting"; however, based on the facts alleged by Plaintiff, it is not clear what "laws" of his unspecified religion he was unable to follow. (Compl., ECF No. 1, PageID.3.) Although Plaintiff references being unable to "worship in [his] community setting," and it appears that Plaintiff would *prefer* to worship in that type of setting, Plaintiff fails to allege any facts showing that attending group religious services is a part of his religious practice. Indeed, Plaintiff fails to allege any facts about his religious practice. Under these circumstances, Plaintiff has failed to show that the free

14

exercise of his unspecified religion was burdened, let alone substantially burdened. Therefore, Plaintiff's First Amendment free exercise claims will be dismissed.

### b.    Claims Regarding Communication with Plaintiff's Fiancé

Plaintiff claims that "[his] fiancé [was] frustrated with [his] circumstances, [and] left [him]." (Compl., ECF No. 1, PageID.3.) Out of an abundance of caution, the Court construes this statement to raise a First Amendment claim regarding Plaintiff's ability to communicate with his fiancé.

A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822 (1974)); *see Turner v. Safley,* 482 U.S. 78 (1987). For example, "[a] prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell*, 417 U.S. at 822). Here, Plaintiff alleges no facts about what was "frustrat[ing]" about "[his] circumstances," and Plaintiff's vague and conclusory allegation without supporting facts or further explanation fails to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Accordingly, any intended First Amendment claims regarding Plaintiff's ability to communicate with his fiancé will be dismissed.

### 4.    Eighth Amendment Claims

### a.    Conditions of Confinement

Plaintiff claims that he "suffered cruel and unusual punishments with inhumane living conditions during his placement at [DRF] from January 2020 to June 2022." (Compl., ECF No. 1, PageID.2.) The Court construes this allegation to raise an Eighth Amendment claim regarding the conditions of his confinement.

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

As an initial matter, although Plaintiff references "inhumane living conditions" at DRF starting in January 2020, besides this conclusory statement, Plaintiff alleges no facts about his confinement at DRF until April of 2022. Therefore, Plaintiff fails to state a claim about the conditions of his confinement prior to April of 2022 because he alleges no facts about this period of time. Moreover, as to Plaintiff's placement in segregation in April of 2022, placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although Plaintiff may have been denied certain privileges as a result of his detention in segregation, he fails to allege any facts showing that he was denied basic human needs and requirements. The United States Court of Appeals for the Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he

does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.

Accordingly, for these reasons, Plaintiff fails to state an Eighth Amendment claim regarding the conditions of his confinement.

### b.      Medical Care

When summarizing his claims, Plaintiff vaguely contends that he suffered "medical neglect," explaining that his "heat related illness" could not be accommodated because his fan was sent home and that "without [his] seeing glasses [his] vision was at a disadvantage." (Compl., ECF No. 1, PageID.4.) The Court construes these allegations to raise an Eighth Amendment medical care claim.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]
plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison
official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*,
894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff references an unspecified "heat related illness," which required a fan that he
did not have, and his need for glasses. (Compl., ECF No. 1, PageID.4.) Plaintiff does not provide
any further facts or explanation about these medical needs. Without additional supporting facts or
explanation, Plaintiff has failed to allege sufficient facts to show that he had a serious medical
need. *See Farmer*, 511 U.S. at 834. Moreover, even setting this issue aside, Plaintiff alleges no
facts to suggest that Defendant Blair was aware of Plaintiff's need for a fan or glasses, let alone
that Defendant Blair knew of this need and disregarded it. "[A] plaintiff must plead that each
Government-official defendant, through the official's own individual actions, has violated the
Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has not shown that Defendant Blair was aware of
Plaintiff's medical needs or had any involvement in Plaintiff's medical care. Accordingly, for these
reasons, Plaintiff fails to state an Eighth Amendment medical care claim against Defendant Blair.

### 5.     Fourteenth Amendment Procedural Due Process Claims

#### a.     Placement in Segregation and at a Higher Security Level

Plaintiff claims that his placement in segregation and his placement at a higher security
level violated his due process rights. (Compl., ECF No. 1, PageID.3.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or
property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).
To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that
one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a
procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or

property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Further, in *Sandin*, the Court held that, regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

As an initial matter, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See id.* at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Furthermore, Plaintiff does not allege that his placement in segregation affected the duration of his sentence, and, as explained below, he fails to show that his placement in segregation

and placement at a higher security level constituted an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484-86.

In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest). Based on the facts alleged in Plaintiff's complaint, Plaintiff was in segregation from approximately April 20, 2022, to May 5, 2022, and June 16, 2022, to August 24, 2022. (Compl., ECF No. 1, PageID.3.) Under these circumstances, Plaintiff fails to allege any facts to show that he was held in segregation for a period of time that would constitute an atypical and significant deprivation.

Plaintiff also alleges that as a result of his placement in segregation, he had a "loss of [unspecified] privileges" and "loss of [his] significant other." (*Id.*, PageID.4.) If confinement in segregation does not implicate a protected liberty interest, it follows that losing privileges for a limited period of time, such as visitation privileges and yard time, does not implicate such an interest. *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no

20

constitutional right to rehabilitation, education, or jobs). Consequently, Plaintiff's loss of privileges did not trigger a right to due process.

Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim regarding his placement in segregation and at a higher security level.

### b.    Opportunity for Parole

Plaintiff claims that his "chance at parole" was impacted by the events at issue in his complaint. (Compl., ECF No. 1, PageID.4.)

There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the United States Court of Appeals for the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir.

2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Under this authority, Plaintiff has no reasonable expectation of liberty until he has served his maximum sentence. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Thus, any alleged interference with Plaintiff's parole prospects does not implicate a federal right.

Accordingly, Plaintiff's Fourteenth Amendment claim regarding his opportunity for parole will be dismissed.

### 6. Fourteenth Amendment Substantive Due Process Claims

To the extent that Plaintiff intended to raise a substantive due process claim against Defendant Blair, as explained below, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive

due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016). Accordingly, Plaintiff's Fourteenth Amendment substantive due process claims against Defendant Blair will be dismissed.

### 7.      Claims Regarding Plaintiff's Grievances

Plaintiff claims that on May 12, 2022, Defendant Blair "violate[d] policy by responding [to a] grievance written on [Blair's] own conduct, thwarting [Plaintiff's] ability to be rectified with any remedy." (Compl., ECF No. 1, PageID.3.)

To the extent that Plaintiff intended to raise a due process claim regarding Defendant Blair responding to Plaintiff's grievance, the courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Moreover, to the extent that Plaintiff intended to allege that Defendant Blair violated his right to petition the government, this right is not violated by a failure to process or act on his grievance. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls.*

*v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Defendant Blair's action also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Accordingly, any intended federal claims regarding Plaintiff's use of the grievance procedure will be dismissed.

### 8.    Claims Regarding Violation of MDOC's Policies

Plaintiff also alleges that Defendant Blair's actions violated the MDOC's policies. (*See* Compl., ECF No. 1, PageID.4.) Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendant Blair violated state law or the MDOC's policies fail to state a claim under Section 1983.

Moreover, to demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendant Blair violated prison policy fails to raise a cognizable federal claim.

### D.    State Law Claims

Plaintiff alleges that all Defendants' actions violated state law. (*See, e.g.*, Compl., ECF No. 1, PageID.3, 4 (claiming that Defendants were negligent and their actions violated the MDOC's policies).) As discussed above, Plaintiff's assertions that Defendants violated state law or the MDOC's policies fail to state a claim under Section 1983. *See supra* Section III.C.8.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

With respect to Defendants Woodin, Bowne, and Unknown Party, because Plaintiff's federal claims against these Defendants will be dismissed, the Court will dismiss Plaintiff's state

law claims against these Defendants without prejudice. As to Defendant Blair, because Plaintiff continues to have a pending federal claim against Defendant Blair, the Court will exercise supplemental jurisdiction over his state law claim against Defendant Blair.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* (ECF No. 2), and will deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.4). Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Woodin, Bowne, and Unknown Party will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims against Defendants Woodin, Bowne, and Unknown Party without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Blair: (i) official capacity claims; (ii) First Amendment free exercise claim; (iii) First Amendment claims regarding Plaintiff's ability to communicate with his fiancé; (iv) Eighth Amendment claims; (v) Fourteenth Amendment procedural and substantive due process claims; and (vi) any intended federal claims regarding Plaintiff's use of the grievance procedure and Defendant Blair's violation of the MDOC's policies. Plaintiff's state law claims and First Amendment retaliation claim against Defendant Blair in Blair's individual capacity remain in the case.

An order consistent with this opinion will be entered.

Dated:   May 7, 2024                          /s/ Sally J. Berens
                                                          SALLY J. BERENS
                                                          United States Magistrate Judge